# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DISTRICT

| | |
|---|---|
| FRED WHITE, Jr., JEROME AUSTIN, and ANGELO ALMAGUER, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>THE PEOPLES GAS LIGHT AND COKE COMPANY and WEC ENERGY GROUP INC.,<br><br>　　　　　Defendants. | Case No.<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT

Plaintiffs Fred White, Jr. ("White"), Jerome Austin ("Austin"), and Angelo Almaguer ("Almaguer") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Stowell & Friedman, Ltd., hereby file this Complaint for race discrimination against Defendants Peoples Gas Light and Coke Company ("Peoples Gas") and WEC Energy Group Inc. (collectively "Defendants," or " the Company") and state as follows:

## PARTIES

1.　　Peoples Gas is a natural gas utility company operating in Illinois. In 2015, Peoples Gas was acquired by WEC Energy Group Inc., a Midwestern electric and natural gas delivery company serving 4.4 million customers in Wisconsin, Illinois, Michigan and Minnesota. Peoples Gas operates as a separate utility company within WEC Energy Group Inc. In 2015, WEC Energy Group Inc. had revenue of $503.4 million from its Illinois operations, which is made up entirely of Peoples Gas.

2. Plaintiff White, an African American, was hired by Peoples Gas in approximately January 1990 as a laborer. White excelled at his job for 26 years until his unlawful termination in 2016.

3. Plaintiff Austin, an African American, was hired by Peoples Gas in 2006 as an operations apprentice. Austin excelled at his job for 10 years until his unlawful termination in 2016.

4. Plaintiff Almaguer, who is Hispanic, was hired by Peoples Gas in 2007 as an operations apprentice. Almaguer excelled at his job for 8 years until his unlawful termination in 2016.

## JURISDICTION AND VENUE

5. Plaintiffs' claims arise under 42 U.S.C. § 1981. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

6. Venue is proper in the Northern District of Illinois. Defendants are licensed to do business and maintain offices in this District, and the unlawful conduct alleged in this Class Action Complaint occurred in this District.

## FACTUAL ALLEGATIONS

7. Defendants have and are engaged in a pattern or practice of racial discrimination, harassment, and retaliation against African Americans and others who challenge the discriminatory treatment of African Americans.

8. Defendants' human resources department caters to and perpetuates the racial discrimination. Because Defendants have no sincere desire to employ or retain African Americans, they do not effectively monitor the treatment of their African American employees and fail adequately to investigate or resolve complaints of racial discrimination.

9.      Defendants' pattern or practice of discrimination, harassment, and retaliation against African Americans and others who complain about the discriminatory treatment includes, but is not limited to, the following practices:

- a.    segregating African Americans within the Company;
- b.    underutilizing African Americans in high-level and/or management positions;
- c.    denying African Americans income and advancement opportunities;
- d.    failing to accord African Americans the same level of respect as non-African Americans;
- e.    subjecting African Americans to a higher level of scrutiny than non-African Americans;
- f.    applying less favorable standards for disciplining and terminating African Americans than standards applied to non-African Americans;
- g.    taking race into account when making employment decisions, including but not limited to decisions regarding overtime and the distribution of resources, including new vehicles or equipment;
- h.    negligently retaining individuals with known propensities to discriminate against or harass African Americans;
- i.    transferring African Americans to territories serviced predominately by African Americans and other minorities;
- j.    creating an environment that is hostile and offensive to African Americans by, among other things, marginalizing African Americans and openly subjecting them to ridicule, bullying, harassment, and micromanagement; and
- k.    retaliating and further discriminating against African Americans and others who oppose unlawful discrimination by, among other things, subjecting them to further discrimination, retaliation, verbal attacks, discipline, and/or termination.

**Racial Discrimination and Harassment**

10.      Consistent with the pattern and practice of discrimination against African Americans in the Company's South Shop, Peoples Gas used race as a factor when allocating resources and overtime and otherwise subjected Plaintiffs White and Austin and other African

Americans to harassment and differential treatment due to their race. Moreover, Peoples Gas has subjected non-African Americans, including Plaintiff Almaguer, to differential treatment because of the race of their crew leaders.

11. Peoples Gas is well aware of the rampant discrimination within the South Shop, as demonstrated by the brazen behavior of the South Shop managers and supervisors, but has refused to take action and has thereby created a culture that condones bias and hostility toward African Americans.

12. Former South Shop District Leader, Tom Tymorek, worked for Peoples Gas for over 20 years before he stepped down in 2014. Prior to his retirement, Tymorek trained Alan Fisher ("Fisher") to take over as a general supervisor in the South Shop. Tymorek has remained in the South Shop as an independent contractor ever since.

13. Tymorek openly displayed his racist attitude within the South Shop. Instead of being reprimanded or terminated, he enjoyed a career with the Company that spanned more than two decades. In his managerial position, Tymorek consistently made racially insensitive and offensive comments about his employees. For example, Tymorek made statements including, but not limited to, the following: "Bitch ass nigger," "Watch this fat black mother fucker. He's known to be lazy and complain," "I almost got your black ass, but don't worry I'm going to get you," and "Get your black ass over here." Tymorek also regularly described African Americans as stupid and lazy.

14. Despite the complaints against Tymorek, Peoples Gas refused to take action, which further emboldened him and perpetuated the culture of discrimination. Tymorek's disdain for African Americans was not limited to his employees in the South Shop, but also encompassed African Americans in positions of authority and anyone deemed to be an ally of

African Americans. Tymorek routinely posts racially charged pictures and comments to his personal Facebook account, which are viewed by South Shop employees. Tymorek was also Facebook friends with the Area Manager of the South Shop, Charlie Graham, who knew of his racial animus. Some of these Facebook postings include the following:




5





**Tom Tymorek**
Feb 10 at 9:30am

Next year's half time entertainment??????
How would it be different than this years?????
I'm getting sick of Caucasian's being the only group considered Racist!!!











15. After Tymorek retired, his District Leader successor, Fisher, continued to discriminate against African Americans. In 2014, Fisher transferred White and Almaguer (Latino) out of his territory to a predominantly African American and Latino territory. After the

transfer, Fisher's entire crew was Caucasian. When questioned about the decision, Fisher said that White and Almaguer would "fit in a lot better over there with your own kind." Fisher also told an African American subordinate that he was "tired of [his] fat ass heating up turkey, chitlins, and greens."

16. Peoples Gas not only subjected African Americans to harassment, but also denied African Americans the same resources and opportunities as their white counterparts. For example, Fisher often refused overtime and new equipment to African American workers with more seniority in favor of more recently hired white workers. Further, Fisher denied overtime and new equipment to African American crew leaders and their crews, in favor of less senior white crew leaders. Due to this treatment, African Americans missed out on income. Moreover, non-African Americans on crews led by African American crew leaders missed out on income because of their association with African Americans.

17. Because Peoples Gas condoned Tymorek and Fisher's behavior, employees who worked in the South Shop knew that hostility toward African Americans was not only tolerated, but encouraged. For example, a white worker, Mike Taglioli, referred to an African American co-worker as a "dumb nigger." The pervasive campaign of discrimination and harassment altered the conditions of employment for African Americans.

18. When individuals complained to Peoples Gas about the discriminatory treatment of African Americans, they were targeted and dismissed in retaliation for their complaints. White, Austin, and Almaguer spoke frequently about the racial harassment and disparate treatment at Peoples Gas. All three also spoke regularly to each other and other co-workers about Tymorek's racist Facebook posts. Throughout 2015, White, Austin, and Almaguer complained to the Company about the discriminatory allocation of overtime work and the racial

11

harassment.  The Company and his fellow workers viewed White as a strong and effective leader because of his experience and seniority.  In 2015, White gained notoriety when he stood up at a general union meeting and complained that African Americans were excluded from the Accelerated Main Replacement Program (AMRP), which generated significant overtime work for the non-African Americans assigned to AMRP.  African Americans and others cheered White at the meeting for bringing up the discriminatory allocation of AMRP overtime.  After the union meeting, White followed up by complaining to general supervisor over construction of AMRP, Valerie Blackman, saying he and his crew, including Almaguer, were not getting overtime hours.  White also complained to Fisher and South Shop Area Manager Charlie Graham about the discriminatory allocation of Saturday overtime, which was being given disproportionately to white employees.  However, Peoples Gas did nothing in response to these complaints.

19.     Because of these complaints, Peoples Gas targeted and terminated all three employees.  From November 2015 to January 2016, White, Almaguer, and Austin were all investigated for allegedly violating employment rules in regard to stand by time.  White, Almaguer, and Austin were all suspended, and later terminated.  Other employees had engaged in the same conduct, but none were disciplined until after March 3, 2016, when Plaintiff's counsel put the Company on notice of Plaintiffs' race discrimination and retaliation claims.  After Peoples Gas was on notice of Plaintiffs intent to bring a class action racial discrimination lawsuit, the Company targeted and imposed discipline on others as a subterfuge for the Company's discrimination and retaliation against White, Austin, and Almaguer.

## COUNT I

### RACE DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. § 1981
### (Classwide)

20. Plaintiffs Fred White, Jr., Jerome Austin, and Angelo Almaguer, on behalf of themselves and others similarly situated, reallege paragraphs 1 through 19 and incorporate them by reference as though fully stated herein as part of Count I of this Complaint.

21. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

22. Defendants maintained a set of uniform, discriminatory employment practices and engaged in a pattern or practice of systemic race discrimination against African Americans that constitutes illegal intentional race discrimination in violation of 42 U.S.C. § 1981.

23. Plaintiffs and all those similarly situated were subjected to and harmed by Defendants' systemic and individual discrimination.

## COUNT II

### RETALIATION IN VIOLATION OF
### 42 U.S.C. § 1981
### (Named Plaintiffs)

24. Plaintiffs reallege paragraphs 1 through 19 and incorporate them by reference as though fully stated herein as part of Count II of this Complaint.

25. Section 1981 makes it unlawful for an employer to retaliate against an employee because that employee engaged in protected activity, such as complaining to an employer about discrimination on the job.

26. Plaintiffs engaged in protected activity under 42 U.S.C. § 1981, and in concerted activity for their mutual aid and protection of themselves and their coworkers by complaining about and reporting racial discrimination, a hostile work environment and retaliation to Defendants. Plaintiffs also placed Defendants on notice of their intent to file a complaint about the racial discrimination at Peoples Gas.

27. Defendants took adverse actions against Plaintiffs in retaliation for engaging in this protected activity, in violation of 42 U.S.C. § 1981.

28. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this court find against Defendants as follows:

    a.    Certify this case as a class action;

    b.    Designate Plaintiffs White, Austin, and Almaguer as Class Representatives and designate Plaintiffs' counsel as Class Counsel;

    c.    Declare that Defendants' acts, conduct, policies and practices are unlawful and violate 42 U.S.C. § 1981;

    d.    Declare that Defendants have engaged in a pattern or practice of racial discrimination against African Americans;

    e.    Order Plaintiffs and all others similarly situated reinstated to their appropriate positions, promotions and seniority, rescind discriminatory disciplinary

    decisions and otherwise make Plaintiffs and all others similarly situated whole;

f. Award Plaintiffs and all others similarly situated the value of all compensation and benefits lost and that they will lose in the future as a result of Defendants' unlawful conduct;

g. Order the Company to go through sensitivity training;

h. Award Plaintiffs and all others similarly situated compensatory and punitive damages;

i. Award Plaintiffs and all others similarly situated prejudgment interest and attorneys' fees, costs and disbursements, as provided by law;

j. Award Plaintiffs and all others similarly situated such other make whole equitable, injunctive and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiffs;

k. Award Plaintiffs and all others similarly situated such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  August 2, 2016        STOWELL & FRIEDMAN, LTD.

                By: /s/ Linda D. Friedman

                Linda D. Friedman
                STOWELL & FRIEDMAN, LTD.
                303 W. Madison Street
                Suite 2600
                Chicago, Illinois 60606
                (312) 431-0888